IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO.: 4:12-CV-00127-FL

| | |
|---|---|
| MYRA L. BRUNTON, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of Social Security, )<br>)<br>Defendant )<br>_____ ) | **MEMORANDUM &**<br>**RECOMMENDATION** |

This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings. (DEs 26, 28). The time for filing any responses or replies has expired and the motions are now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), they have been referred to the undersigned for the entry of a Memorandum and Recommendation. For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE 26) be DENIED, that the Defendant's Motion for Judgment on the Pleadings (DE 28) be GRANTED and that the Commissioner's final decision be affirmed.

**I. STATEMENT OF THE CASE**

Plaintiff protectively filed an application for supplemental security income benefits on January 14, 2009, alleging an onset date of June 30, 2002. (Tr. 61). Her claim was denied initially and upon reconsideration. (*Id*. at 67, 76). A hearing was held before an Administrative Law Judge ("ALJ") on September 14, 2010 and, in a decision dated October 12, 2010, the ALJ denied Plaintiff's application. (*Id*. at 14). The Social Security Administration's Office of Disability Adjudication and Review Appeals Council ("AC") denied Plaintiff's request for

review on May 23, 2012, thus making the ALJ's decision the final decision in this matter. (*Id*. at 1). Plaintiff appealed that decision to this Court on June 29, 2012. (DE 1-2).

## II. STANDARD OF REVIEW

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . .

42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." *Craig*, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

**III. ANALYSIS**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

*Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001).

The ALJ followed the sequential evaluation in this case. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date, January 14. 2009. (Tr. 19). At step two, the ALJ found that Plaintiff had the following severe impairments: obesity; osteoarthritis; diabetes; arthritis of the knee; visual problems; and headaches. (*Id*). However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*). Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light, unskilled work except that, due to vertigo, she cannot work at heights or around moving machinery and she cannot read small print due to visual problems. (*Id*. at 20). The ALJ found that Plaintiff had no past relevant work. (*Id*. at 23). Considering Plaintiff's age, education, work history and RFC, the ALJ determined that there were jobs in significant

3

numbers in the national economy which Plaintiff was capable of performing. (*Id*). These include parking lot attendant; cleaner, housekeeper; and photo copy machine operator. (*Id*. at 24). Accordingly, the ALJ found that Plaintiff had not been under a disability during the relevant time period. (*Id)*.

Plaintiff's contends presently that the ALJ's erred in assessing her credibility and that he failed to include her heart disease, and its resulting limitations, as a severe impairment. She also maintains that the ALJ failed to properly weigh opinion evidence.

*A. Evidence before ALJ*

The undersigned has reviewed the entire record, the relevant parts of which shall now be highlighted.

*1. Plaintiff's testimony*

A hearing on Plaintiff's claims was held on September 13, 2010. (*Id*. at 32). She stated that she lives with her mother's niece and her son. (*Id*. at 35). She stated that she went through the 10th grade in school and that she had not worked full time for 8–10 years. (*Id*. at 36–37). She does not have a driver's license. (*Id*. at 38). She testified that she has applied for jobs but has not had luck in getting one. (*Id*). She stated that she attended vocational rehabilitation but that it was unable to help her secure a position. (*Id*. at 38–39). She further stated that a person at the vocational rehabilitation suggested that she pursue social security disability. (*Id*. at 39).

Plaintiff testified that she had a fall in 2008 and injured her knee, from which she was still experiencing pain. (*Id*. at 41). She stated that she had arthroscopic knee surgery in June, 2009 but it gave her no relief from her pain. (*Id*. at 42). She also has a cyst on the back of her knee which, she stated, causes her problems as well. (*Id*. at 42–43). She further testified to back

4

and right hip problems as well as carpal tunnel in her hands. (*Id*. at 43). She was instructed to wear a brace on her knee and on her hands, but she testified she was unable to afford them. (*Id*. at 44). Although she applied for Medicaid, she said she was not approved, and that she did not appeal because she became frustrated. (*Id*. at 44–45). She stated that she does not seek medical care as often as she needs to because she cannot afford it. (*Id*. at 47).

Plaintiff also testified that she experiences numbness in her right arm and that she developed diabetes. (*Id*. at 47–48). She stated that it is not under control because she cannot afford insulin, or Benicar for her high blood pressure. (*Id*. at 48). She testified that, as a result, she experiences high blood pressure, urinary problems, blurry vision and that she does not sleep well. (*Id*). She stated that she has difficulty walking, that her knees give out and that she experiences shortness of breath, although she attributed that to her cigarette smoking and being overweight. (*Id*. at 49). She stated that she has fallen, and that she sometimes uses a walking stick. (*Id*).

Plaintiff testified that she saw a cardiologist who advised her to stop smoking, which she did. (*Id*. at 50). She stated that she still experiences shortness of breath and that she has to sleep with her head elevated. (*Id*). She testified that she has swelling in her knee, calf and feet, for which she was advised to keep her leg elevated. (*Id*. at 50–51).

Plaintiff testified that she can stand for 30–45 minutes before she needs to sit down and that she can walk about 10 minutes, or 20 minutes if she has a cane, before she has to stop. (*Id*. at 51–52). The heaviest she can lift is about two (2) pounds. (*Id*. at 54–55). Although she had a positive urine test for cocaine, she testified that she does not use drugs and no longer drinks. (*Id*. at 53). She stated that she has constant headaches. (*Id*. at 54).

5

*2. Medical Evidence*

The parties do not dispute the medical evidence of record, which will be highlighted below.

Plaintiff was seen on July 23, 2008 at the Lenoir Memorial Hospital for a fall she had experienced approximately two weeks earlier. (*Id*. at 230). Her right knee was noted to have a contusion and arthritis. (*Id*). Plaintiff continued to experience knee pain, with tingling down her leg, as well as minor swelling in the right knee and right elbow. (*Id*. at 214).

On September 17, 2008, Dr. Frances Williams found her right knee tender and diagnosed Plaintiff with degenerative joint disease in her right knee. (*Id*. at 208). Several days later, Plaintiff reported to Lenoir Memorial Hospital complaining of dizziness, shortness of breath and vomiting an was diagnosed with vertigo and hyperglycemia. (*Id*. at 228–29). She was also diagnosed with diabetes. Additionally, x-rays showed degenerative changes in her thoracic spine but there was no evidence of acute cardiopulmonary disease. (*Id*. at 257). Plaintiff saw Dr. Williams on October 21, 2008 for the pain in her right knee, for which she was referred to physical therapy and a surgical consultation was discussed. (*Id*. at 203).

On January 12, 2009, Plaintiff was seen at Lenoir Orthopedics for her right knee pain, which she described as grinding and popping, as well as right hip pain. (*Id*. at 194–95). She walked with a limp, and reported that she had not taken her diabetic or hypertension medication. (*Id*.). An x-ray revealed moderate degenerative arthritic changes with loss of joint space and spurring. (*Id*. at 195). A January 15, 2009 MRI of Plaintiff's knee showed a vertical displaced tear of the junction of the body and posterior horn of the lateral meniscus contacting both anterior surfaces; joint effusion; a complex Baker's cyst that was partially ruptured and septated;

6

and mild articular cartilage degeneration. (*Id*. at 256). On January 23, 2009, it was noted that Plaintiff walked with a limp but required no assistive devices. (*Id*. at 321). She was advised to keep her leg elevated and was given Percocet for pain. (*Id*).

On April 7, 2009, Dr. Scott Stegbauer recommended surgery for Plaintiff's right knee, which was "catching and popping." (*Id*. at 324). She had a chest x-ray on April 13, 2009 which showed no evidence of acute disease or cardiac process. (*Id*. at 368). Plaintiff presented at Lenoir Memorial Hospital on April 17, 2009 for her arthroscopic knee surgery, which noted that the split between the body and posterior horn of the lateral meniscus was significant and could not be fixed. (*Id*. at 363). An ultrasound on April 23, 2009 revealed no evidence of deep vein thrombosis in the right leg. (*Id*. at 359).

On May 2, 2009, Plaintiff was no longer feeling pain in her knee but was experiencing stiffness in the back of her knee, for which she was referred to physical therapy (*Id*. at 342). Plaintiff was unable to get PT because she lacked insurance and/or financial resources. (*Id*. at 375). She was walking with a limp and had a dull aching and throbbing and was recommended a knee brace. (*Id*. at 381). On July 8, 2009, Plaintiff reported that her pain was 7/10 and that she could not afford the knee brace. (*Id*. at 375). She reported sharp pain in the medial side of her right knee but, at her request, she was released from treatment given the limited options due to her financial situation. (*Id*. at 380).

On September 23, 2009, Plaintiff complained of knee and shoulder pain, with numbness and tingling into her arm. (*Id*. at 431). It was also noted that she was unable to afford test strips for her diabetes. (*Id*. at 432). On January 14, 2010, it was noted that Plaintiff had not checked her blood sugar levels since October, 2000 because she had no testing strips. (*Id*. at 426). She also

7

complained of numbness in both hands and difficulty in lifting objects. (*Id*). Thereafter, on June 30, 2010, Plaintiff stated that she had been out of diabetes medication for one month and did not take her high cholesterol medication nor change her diet. (*Id*. at 418–25). She was experiencing shortness of breath, tightness in her chest, chest pain and fatigue with minimal exertion, for which reasons she was seen at Kinston Cardiology Associates on July 13, 2010. (*Id*. at 423, 393). Plaintiff reported independence in her daily activities. She also stated that she had numbness radiating down her right arm that would subside within 2–3 minutes. (*Id*. at 392–94). An echocardiogram revealed left ventricular hypertrophy with normal left ventricular systolic function. (*Id*. at 394). A cardiac stress test performed via IV on July 19, 2010 revealed no significant change in heart rate or blood pressure. (*Id*. at 395). Other images showed mild-to-moderate anterolateral myocardial ischemia, consistent with possible disease of the diagonal branches of the left anterior descending coronary artery, and normal left ventricular wall motion and ejection fraction. (*Id*. at 396).

Plaintiff was seen at Carolina Vision in January, 2007 and again in December, 2009 complaining of difficulty reading and headaches. (*Id*. at 371–74). Vision testing indicated uncorrected vision of 20/200 and 20/400 and glasses were recommended. (*Id*).

The North Carolina Department of Health and Human Services Division of Vocational Rehabilitation Services issued a Report on October 15, 2009. (*Id*. at 179–82). The report noted that she had difficulty walking, difficulty handling and feeling, that she could lift 5–10 pounds and that she could not sit or stand for more than 30–45 minutes. (*Id*. at 179). The report noted her work-history, her physical limitations and her vocational strengths, and stated that she does not have transferrable skills. (*Id*. at 181). It also opined that she should continue her social security

claim as "her physical limitations would make it quite difficult to locate a job at which she would be successful." (*Id*). It also found that jobs where she could be seated, such as a cafeteria cashier, restaurant hostess or kitchen prep, were jobs that should be given consideration. (*Id*).

Two RFC assessments of Plaintiff by state agency physicians were conducted in March, 2009 and May, 2009. (*Id*. at 291–98; 328–35). Dr. Bertron Haywood found Plaintiff capable of light work with no limitations. (*Id*). Dr. Alan B. Cohen noted Plaintiff's arthroscopic surgery and her ability to ambulate without assistance and also concluded she was capable of light work. (*Id*).

*B. Credibility*

Plaintiff challenges the credibility afforded to her testimony by the ALJ. Specifically, she claims that a finding that she is capable of performing light work rests on a determination that she is not fully credible. She contends that the ALJ erred in finding that: the objective medical evidence does not support her allegations: she was noncompliant and did not seek treatment; and her description of her activities of daily living were not verified.

"Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). The regulations provide a two-step process for evaluating a claimant's subjective complaints of pain or other symptoms. 20 C.F.R. § 404.1529; *Craig*, 76 F.3d at 593-96. First, the ALJ must determine whether there is objective medical evidence showing the existence of a medical impairment that could be reasonably expected to produce the pain or alleged symptoms. 20 C.F.R. § 404.1529(b); *Craig*, 76 F.3d at 594. Second, the ALJ evaluates the intensity and persistence of the symptoms to determine how they limit the capacity for work. 20 C.F.R. 404.1529(c); *Craig*, 76 F.3d at 595. The ALJ

9

evaluates the intensity and persistence of the symptoms and the extent to which they limit a claimant's capacity for work in light of all the available evidence, including the objective medical evidence. 20 C.F.R. 404.1529(c).

At the second step, however, claims of disabling symptoms may not be rejected solely because the available objective evidence does not substantiate the claimant's statements as to the severity and persistence of the symptoms. *See Craig*, 76 F.3d at 595. Since symptoms can sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, all other information about symptoms, including statements of the claimant, must be carefully considered in the second part of the evaluation. 20 C.F.R. 404.1529(c)(2). The extent to which a claimant's statements about symptoms can be relied upon as probative evidence in determining whether the claimant is disabled depends on the credibility of the statements. SSR 96-7p, 1996 WL 374186, at *4. Ultimately, the ALJ's findings with regard to a claimant's credibility must "contain specific reasons . . . supported by evidence in the case record." *Id*. at *2.

*1. Objective medical evidence*

Plaintiff's first argument is that the ALJ erred in determining that the objective medical evidence did not support her allegations because, she contends, a claimant cannot be required to produce evidence to support her complaints in order to be found credible. In this matter, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (*Id*. at 21). Thus, the Plaintiff satisfied the first factor of the two-part inquiry as to credibility. The ALJ further determined that "the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to

10

the extent they are inconsistent" with her RFC assessment. (*Id*). This assessment was based on, *inter alia*., her noncompliance with the prescribed treatment of her conditions as well as her reports of independence in activities of daily living. Thus, Plaintiff has not met the second factor of the two-part credibility inquiry. In sum, while acknowledging Plaintiff's impairments could cause the symptoms she alleged, the ALJ concluded that these symptoms were not as disabling as Plaintiff contended nor did they preclude her from performing light work.

While the Plaintiff characterizes the ALJ's decision as impermissibly requiring her to produce objective evidence to support her allegations of her limitations, her argument is inaccurate. The ALJ evaluated her described limitations with the objective medical evidence, as well as the other relevant evidence of record. Such analysis is not only permitted, but required. *See* 20 C.F.R. § 416.929(c)(4); *Craig*, 76 F.3d. at 595–96; *Hall v. Astrue*, No. 2:11-CV-22-D, 2012 WL 3732815, at *10 (E.D.N.C. July 6, 2012). Accordingly, the ALJ properly assessed Plaintiff's credibility regarding the limiting effects of her pain and there is substantial evidence to support that determination. Thus, Plaintiff's argument on this issue is without merit.

### 2. *Plaintiff's treatment*

Plaintiff also contends that the ALJ erred in finding that she was non compliant with her treatment and that she failed to seek treatment. She attributes any such behavior to her lack of financial resources, not an unwillingness or a lack of need. Plaintiff testified that she applied for Medicaid but her claim was denied. She did not file an appeal because she was frustrated. Additionally, the ALJ noted that while she maintained that she could not afford medical care or medication, she had money for cigarette consumption. This supports his finding that she did not utilize the resources available in treating her conditions. Accordingly, this assignment of error is

unsupported.

   *3. Plaintiff's activities of daily living*

Plaintiff next argues that the ALJ erred in stating that her activities of daily living could not be verified. In discussing her activities of daily living, the ALJ stated:

> Although the claimant has described daily activities which are quite limited, including the inability to lift over two pounds or stand longer than 30–45 minutes, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed[.]

(*Id*. at 23). Plaintiff argues that to require claimants to verify their activities of daily living through objective evidence would invalidate any hearing testimony. Although a lack of objective verification is not a valid basis for rejecting a claimant's testimony, the lack of objective verification is, nonetheless, one factor in evaluating the veracity of such testimony. *Watson v. Astrue*, No. 5:11-CV-466-FL, 2012 WL 4026041, at *7 (E.D.N.C. Sept. 12, 2012).

As noted above, Plaintiff mischaracterizes the ALJ's decision as impermissibly requiring her to produce objective evidence to support her allegations. It is not only permissible but required that the ALJ evaluate her described daily activities with the objective medical evidence, as well as the other relevant evidence of record. *See* 20 C.F.R. § 416.929(c)(4); *Craig*, 76 F.3d. at 595–96; *Hall v. Astrue*, No. 2:11-CV-22-D, 2012 WL 3732815, at *10 (E.D.N.C. July 6, 2012). The extent to which the record did not support her allegations was a factor properly weighed into the credibility determination. Thus, this argument lacks merit.

*C. Heart Disease*

Plaintiff also contends that the ALJ failed to consider her heart disease as a severe impairment or to account for its limiting effects in formulating her RFC. As noted above, she was seen at Kinston Cardiology on one occasion for complaints of shortness of breath, palpitations and chest pain. (*Id*. at 392–94). The ALJ noted that her EKG was normal and that an echocardiogram showed left ventricular hypertrophy and normal systolic function. (*Id*). Plaintiff's stress test showed no significant changes and she was advised on diet modification and exercise. The condition could be controlled through lifestyle changes and required no medication, frequent treatment or hospitalization. Instead, Plaintiff was advised merely to change her diet and engage in physical activity. Moreover, Plaintiff herself attributed these symptoms to her smoking and her weight. It reviewing the cardiology report and incorporating it into his analysis, the ALJ clearly considered this evidence.

For an impairment to be "severe" means that the impairment at issue "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Social Security Ruling ("SSR") 96–8p contemplates that a "severe" impairment "has more than a minimal effect on the ability to do basic work activities." SSR 96–8p. A plaintiff bears the burden of proving an impairment is "severe." *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

The record supports the ALJ's conclusion that Plaintiff's heart-related symptoms did not adversely affect her functioning. The claimant carries the burden of showing how her obesity affected her ability to perform work-related functions. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (finding that the applicant bears the burden of production and of proof during the first four steps of the inquiry). Nothing in the record indicates that her heart symptoms—

13

shortness of breath, palpitations, and chest tightness lasting 2–3 minutes—limited her ability to perform basic work activities. The cardiology report notes her complaints and makes, generally, normal findings, prescribing only lifestyle changes. There is no medical record indicating that these problems created any functional limitation for Plaintiff. She has thus failed to carry her burden of providing evidence to support her claims of disability

Moreover, any error that could be ascribed to the ALJ's not finding her heart problems to be a severe impairment was harmless. The ALJ found other impairments "severe," so he continued the five-step analysis and considered all of Plaintiff's impairments in reaching his RFC determination. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (finding error harmless when ALJ would have reached the same result notwithstanding an error in his analysis). Accordingly, this argument is meritless.

*D. Weight of evidence*

Finally, Plaintiff argues that the ALJ failed to properly weigh the vocational rehabilitation report, which found that she would have a difficult time in locating a job. Specifically, the October, 2009 report found that "her physical limitations would make it quite difficult to locate a job at which she would be successful." (Tr. at 181). The ALJ afforded it little weight, concluding the severity of physical limitations incorporated into the report were unsupported by the medical records.

The vocational rehabilitation report is based on one visit the agency had with Plaintiff, and relied on her subjective assessments of her abilities and limitations, no the objectve medical evidecne before the ALJ. The ALJ is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. *Id*.

14

§§ 404.1527(f)(2)(I) and 416.927(f)(2)(I). Clearly, the ALJ considered this report as he discussed it in his determination. (Tr. at 22). However, it was afforded little weight to the extent it was not supported by the record. Thus, there is substantial evidence to support the ALJ's findings with respect to the vocational rehabilitation report.

## IV. CONCLUSION

For the aforementioned reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE 21) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE 25) be GRANTED, and that the decision be affirmed.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on January 15, 2014.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE